Ruth Ellen CHURCH, Plaintiff-Appellant,

v.

BOBBS–MERRILL COMPANY, Inc., Defendant-Appellee.

No. 12618.

United States Court of Appeals
Seventh Circuit.

Dec. 2, 1959.

James C. Jay, John Z. Kepler, Indianapolis, Ind., for appellant.

Paul N. Rowe, John B. King, Indianapolis, Ind., Baker & Daniels, Indianapolis, Ind., of counsel, for appellee.

Before SCHNACKENBERG, PARKINSON [1] and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

Ruth Ellen Church, plaintiff-appellant [2] brought this diversity action against Bobbs-Merrill Company, Inc., defendant-appellee [3] seeking recovery of damages for alleged breach of contract. The District Court entered judgment for defendant on its motion for summary judgment. Plaintiff appealed and contends that the District Court erred in finding that there was no genuine issue as to any material facts involved and that as a matter of law defendant was entitled to summary judgment.

The contested issues are (1) whether the contract was rescinded by mutual agreement (2) whether plaintiff is estopped to charge defendant with breach of the contract (3) whether plaintiff repudiated the contract and (4) whether plaintiff failed to perform obligations under the contract which were prerequisite to defendant's duty to perform.

The contract alleged to have been breached was executed by plaintiff and defendant on January 18, 1951. In that contract plaintiff assigned to defendant all the volume publication rights in an unpublished literary composition to be written by plaintiff and entitled "Mary Meade's Magic Cookery" and plaintiff agreed to deliver to defendant, on or before January 2, 1953, the manuscript of said literary composition, consisting of approximately 4,000 recipes, complete, legible and ready for the printer. The defendant agreed to publish the work in one volume in the style and manner it deemed best. The contract fixed no publication date or time requirement for the performance of any part of defendant's undertaking. Plaintiff's complaint charges that on or about November 13, 1957 the defendant wholly repudiated the contract.

The material facts as hereinafter set forth appear from the admissions, exhibits and affidavits submitted in support of and in opposition to the motion for summary judgment.

From the execution of the contract until 1956 plaintiff periodically supplied portions of the manuscript. During the period 1952 through 1955 plaintiff pursuant to separate contracts prepared two other manuscripts which were published by defendant. The first was a book entitled "Mary Meade's Magic Recipes for the Electric Blender" published in 1952. The second book "Mary Meade's Kitchen Companion" was published in 1955. It is conceded that the preparation and publication of the two intervening books retarded progress on the preparation and completion of the manuscript for "Mary Meade's Magic Cookery", particularly since parts of the manuscript delivered earlier for "Mary Meade's Magic Cookery" were taken from that work and incorporated in the 1955 book.

In September of 1952 the contract deadline for delivery of manuscript was formally extended by defendant to September 15, 1953. The letter of extension noted that the original contract was to remain in full force and effect except for the extension of the date for delivery of manuscript. There were no further formal extensions but it is admitted that the date for delivery of the manuscript was from time to time extended by mutual consent and that the contract was considered to be in effect at the time of the alleged breach.

Subsequent to 1955 no additional manuscript was submitted by the plaintiff. In February of 1957 plaintiff wrote the defendant that she had the last chapters ready except for a little final organization, but realized that there needed to be revision on earlier chapters due to taking out material used in the 1955 book. Plaintiff also inquired if there was any

---

1. While Judge PARKINSON participated in the hearing of oral arguments and a conference of the division judges above-named, he was not present at the time of, and did not participate in, the adoption of this opinion. He concurred in the result reached in this opinion.

2. Referred to as plaintiff.

3. Referred to as defendant.

thought of publishing the manuscript in parts. The defendant replied under date of March 7, 1957 that it had no thought of publishing parts of the manuscript as small separate books and advised that to insure against possible failure of the project that:

"First, the manuscript must be right, every detail in the best and most attractive shape. This will take time, thought and effort. Second, we must choose the most favorable season in which to launch the book. (Before we have any real choice, the manuscript must be in final form, ready for manufacture.)"

Plaintiff made no further inquiry until August 21, 1957 and during the interval no additional or revised manuscript was supplied by plaintiff. Under date of August 21, 1957 the plaintiff wrote defendant stating that its Indianapolis office had 85% of the finished manuscript and advised "I have the remaining chapters all but ready, but have not sent them as it seems now there is no definite plan for publication" and:

"Unless there is a firm, clear plan for the book I should like to have the manuscript back and present it to another publisher. Each chapter could be a book in itself".

Under date of September 4, 1957 the defendant replied as follows:

"I take it from your letter that what you want us to do now is to set up a definite publication schedule for the book; and if we are not able to do that at this time, you would like to have the manuscript returned and the contract cancelled so that you could arrange for publication elsewhere. Nothing could be fairer than that. From time to time we have given you extensions of the delivery date for the final, complete, manuscript; and in every instance I believe that this has been a matter of mutual accord."

The defendant further stated that plaintiff could expect a definite answer to her "proposal" within four or five weeks.

On October 17, 1957 the defendant advised plaintiff to the effect that she could expect a reply soon. Under date of November 13, 1957 defendant advised of its decision and that "We will return promptly all the manuscript that we are now holding".

Plaintiff admits receipt of the defendant's letters, return of the manuscript to her and its submission to other publishers.

Subsequent to its letter of September 4, 1957 defendant received no further communications from plaintiff except a letter under date of December 7, 1957 from a firm of attorneys consulted by plaintiff stating that defendant's conduct was a breach of its contract and that plaintiff would look to defendant for reimbursement for any and all damages suffered.

We find no genuine issue concerning any material fact in regard to the question of whether the actions of the parties effected a mutual rescission of the contract. The situation here presented did not require, as plaintiff contends, that a jury determine what plaintiff intended by her letter of August 21, 1959. It is admitted that this letter was addressed to the defendant at a time when plaintiff had furnished no more than 85% of the required manuscript, some of which had to be revised, and had furnished no manuscript for over a year and one-half. The letter informed the defendant that unless it had a firm, clear plan for the book, the plaintiff would like the manuscript back to present to another publisher. It suggested that each chapter of the manuscript could be published as a separate book. The contract called for publication as a single volume. A similar proposal by plaintiff to publish the manuscript material in parts as separate books had met with unfavorable response in March and plaintiff reminded that timing of the publication must await manuscript in final form, ready for manufacture. If there was ambiguity in plaintiff's letter of August 21, 1957 as to (1) whether it should be taken as a request for return of the manuscript unless con-

tract requirements be altered as to the format of the publication—from a single volume, the material for which was not complete, to publication in parts as separate small books; or (2) be regarded as a demand that a definite date for future publication be then fixed; or (3) be deemed, as plaintiff urges, an attempt to accelerate an answer as to possible future publication plans, that ambiguity was resolved by defendant's reply. In its letter of September 4, 1957 the defendant in clear and unambiguous terms expressed its understanding of plaintiff's request of August 21, 1957. The material facts on the question of mutual rescission are plaintiff's request of August 21st, the defendant's expressed understanding of that proposal, which plaintiff admittedly knew, and the fact that plaintiff made no answer whatsoever during the period of over two months which intervened between defendant's letter of September 4th and its determination on November 13, 1957 that it elected to return the manuscript rather than to attempt at that time to set up a definite publication schedule for the book.

■■■■■ A contract may be rescinded by mutual agreement found in the acts of the parties and the attending circumstances. Williston on Contracts, Sec. 1826, 1938 ed. It is evident that when a contract is rescinded by mutual consent or otherwise no action can be maintained for a breach thereof. Ralya v. Atkins, 157 Ind. 331, 61 N.E. 726.

There is no dispute concerning any material fact relating to the acts or conduct of the parties and plaintiff was bound by defendant's interpretation of her request of August 21, 1957. Star-Chronicle Publishing Company v. New York Evening Post, 2 Cir., 256 F. 435. We therefore hold that as a matter of law defendant's acceptance of plaintiff's offer as understood by it, which understanding was known to plaintiff for over two months and not questioned before acted upon by defendant, effected a mutual rescission of the contract.

■ In addition plaintiff is estopped from asserting a breach of contract. Plaintiff's request for return of the manuscript was inconsistent with a performance of the contract by defendant. Defendant was under no duty to fix any definite schedule for publication until it had received the balance of the required manuscript. Plaintiff having originated the proposal had a clear duty to speak if defendant's interpretation was erroneous. She did not do so for a period of over eight weeks, even though she received an intervening reminder of defendant's reliance on its understanding of her proposal. Plaintiff by electing to remain silent while defendant proceeded to accept her proposal is estopped from charging defendant with repudiating the contract. The return of the manuscript was induced by plaintiff's conduct.

The summary judgment for defendant was proper. We deem it unnecessary to consider the further issues discussed in the briefs.

The judgment of the District Court is affirmed.

Affirmed.