FEDERAL REPUBLIC OF
GERMANY, Plaintiff,

v.

Edward I. ELICOFON, Defendant,

Elisabeth Mathilde Isidore Erbgross-Herzogin Von Sachsen-Weimar-Eisenach (Grand Duchess of Saxony-Weimar), and Kunstsammlungen Zu Weimar, Plaintiffs-Intervenors.

No. 69 C 93.

United States District Court,
E. D. New York.

Aug. 24, 1978.

Taylor, Ferencz & Simon, New York City, for plaintiff-intervenor Grand Duchess of Saxony-Weimar; Benjamin B. Ferencz, Kenneth Simon and Robert Funicello, New York City, of counsel.

Botein, Hays, Sklar & Herzberg, New York City, for plaintiff-intervenor Kunstsammlungen Zu Weimar; Harry I. Rand, Lawrence M. Kaye, and Amy Adelson, New York City, of counsel.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendant.

Memorandum of Decision and Order

MISHLER, Chief Judge.

Nearly nine years ago, this action was commenced to recover two portraits painted by the celebrated fifteenth century German artist, Albrecht Duerer. Until 1945, the paintings were exhibited in a museum in Weimar known as Staatliche Kunstsammlungen Zu Weimar.[1] During the American occupation of Weimar at the end of World War II—sometime between April

and July of 1945—the paintings were stolen from the Schwarzburg Castle where they had been placed for safekeeping by museum authorities. On July 1, 1945, two months after the defeat of the Third Reich and the surrender of the German government, Soviet troops arrived in Weimar and displaced the Americans pursuant to the Yalta Agreement of June 5, 1945. Shortly thereafter, the director of the museum learned that the Duerer treasures were missing. Some twenty years later, they were rediscovered in the possession of a Brooklyn resident named Edward I. Elicofon.

I

PRIOR PROCEEDINGS

In January 1969, the Federal Republic of Germany (the "FRG"), claiming to be the sole legal representative of the German people, instituted this lawsuit against Elicofon to recover the paintings. Two months later, the Grand Duchess of Saxony-Weimar (the "Grand Duchess") moved to intervene as plaintiff, asserting ownership of the Duerers by assignment from her former husband, Grand Duke Carl August. By order dated March 25, 1969, this court granted her leave to intervene.

In April 1969, the Weimar Art Collection, Kunstsammlungen Zu Weimar ("Kunstsammlungen") moved for leave to intervene, claiming it alone was entitled to possession of the paintings. The other parties opposed the application on the ground that Kunstsammlungen was an instrumentality of the then unrecognized government of the German Democratic Republic (the "GDR"). By memorandum of decision and order dated September 25, 1972 (358 F.Supp. 747 (E.D. N.Y.1972), aff'd, 478 F.2d 231 (1973), cert. denied, 415 U.S. 931, 94 S.Ct. 1443, 39 L.Ed.2d 489 (1974)), the Court denied the motion to intervene, finding that Kunstsammlungen was an arm or instrumentality of the GDR, a government not recognized by the United States and therefore not

1. The Territory of Weimar was one of seven political subdivisions of the Land of Thuringia. The Land of Thuringia, created by the German Legislature in 1920, is currently one of the constituent states of the German Democratic Republic (East Germany).

entitled to sue in its courts. On September 4, 1974, the United States extended formal recognition to the GDR. Thereafter, the court vacated its order of September 25, 1972, and permitted the intervention of Kunstsammlungen.

On April 9, 1975, the Grand Duchess amended her intervenor-complaint to add a series of cross-claims against Kunstsammlungen. By answer dated May 16, 1975, Kunstsammlungen denied the Grand Duchess' claim of right to the paintings and asserted various affirmative defenses.

Following the intervention of Kunstsammlungen, the FRG moved to discontinue its claim with prejudice and on December 9, 1975, the motion was granted.

Upon the withdrawal of the FRG from the action, there remained three competing claims to the Duerers: that of defendant Elicofon, who rested title upon his status as a bona fide purchaser and upon the untimeliness of his opponents' claims; that of plaintiff-intervenor Grand Duchess; and that of plaintiff-intervenor Kunstsammlungen. The intervenors' theories of ownership are described in subsequent portions of this opinion.

## PENDING MOTIONS

Kunstsammlungen moves for summary judgment dismissing the Grand Duchess' intervenor complaint and the cross-claims on the ground that there is no genuine issue as to any material fact and their dismissal is required as a matter of law. Alternatively, Kunstsammlungen contends that (i) the cross-claims should be dismissed under Rule 12(c) because the pleadings disclose that they are not authorized by Rule 13(g), and thus there is no independent jurisdictional basis; (ii) the cross-claims and the intervenor-complaint should be dismissed because of a failure to join indispensable parties and (iii) the cross-claims are barred by the doctrine of sovereign immunity.

In addition to opposing the above motions, the Grand Duchess seeks an order compelling the production of documents to enable her to adequately resist the motion for summary judgment.

## THE PLEADINGS

Like Kunstsammlungen's, the Grand Duchess' amended intervenor-complaint alleges that the Duerer paintings were stolen in 1945 during the American occupation of Weimar and subsequently purchased by Elicofon from the thief or the latter's transferee. There, however, the similarity ends. Whereas Kunstsammlungen alleges that it is entitled to possession of the paintings as legal successor to the former Territory of Weimar, the Grand Duchess asserts exclusive ownership on the following grounds:

(i) The Duerer paintings were originally owned as part of the private art collection of the Grand Duke of Saxony-Weimar-Eisenach. In 1868, they were loaned to the Grand Ducal Museum at Weimar, subject to recall by the Grand Duke.

(ii) In 1921, the Territory of Weimar, successor to the State of Sachsen-Weimar-Eisenach, entered into an agreement (the "1921 Settlement Agreement") with the Grand Duke Wilheim Ernst who, three years earlier, had abdicated his sovereignty. The Agreement acknowledged that the Grand Ducal Art Collection, of which the Duerers were a part, were owned by the former Grand Duke. It further provided that, as in the past, the collection would remain on loan to various museums and other institutions controlled by the Territory of Weimar. As consideration for said loan, the Territory of Weimar and its successors undertook the obligation to pay the Grand Duke and his male descendants 300,-000 marks per annum.

(iii) Payments pursuant to the 1921 Settlement Agreement ceased in 1945, notwithstanding the fact that the male descendants of Grand Duke Wilhelm Ernst were then extant and continue presently to survive.

(iv) The failure to make the payments required by the 1921 Settlement Agreement has terminated that Agreement and "any rights to possession of the Grand Ducal Art Collection, including the Duerer paintings, conferred by its terms to the Territory of Weimar and its successors, have been extin-

guished" and the successor to Grand Duke Wilhelm Ernst is entitled to immediate repossession of the paintings. (Grand Duchess' Complaint & Cross-claim, para. 9).

(v) The hereditary successor to the former Grand Duke Wilhelm Ernst, Grand Duke Carl August (his oldest son), has assigned to the Grand Duchess all his right and interest in the paintings and all claims for damages arising from, *inter alia*, the nonpayment of annuities due under the 1921 Settlement Agreement.

The Grand Duchess' four cross-claims against Kunstsammlungen are predicated upon the allegation that the latter is "an arm, agency and instrumentality of the German Democratic Republic" (Grand Duchess' Complaint & Cross-claim, para. 18). Three of the four cross-claims are directly founded upon the 1921 Settlement Agreement. The first alleges that any claim of possession or title to the paintings by the GDR could only have been acquired by it as successor in interest to the Territory of Weimar and that, by reason of the nonperformance since 1945 of the terms of the 1921 Settlement Agreement, such possession or title has been extinguished. The second claim asserts that should the GDR, and through it Kunstsammlungen, be held to have acquired title or right to possession of the Duerers by virtue of the 1921 Settlement Agreement, both are liable for the annuity payments due thereunder, to wit, 300,000 marks annually since 1945. The third cross-claim avers that since 1945, works of art other than the Duerers which belonged to the Grand Duke under the 1921 Settlement Agreement have been confiscated by the GDR without compensation. It further asserts that the Duke's male descendants or their assigns are entitled under the terms of that Agreement to declare that the GDR has consented to an exchange of those wrongfully taken works of art for the Duerers. Finally, the fourth claim

alleges that Kunstsammlungen's intervention in this action has forced the Grand Duchess to incur expenses far in excess of those she otherwise would have incurred to recover the paintings.

The Grand Duchess requests alternative relief. First, she seeks a judgment (i) declaring her to be the owner of the paintings and entitled to their possession and custody; (ii) enjoining all persons, including defendant and Kunstsammlungen, from interfering with her title, custody and possession; and (iii) dismissing Kunstsammlungen's intervenor-complaint and awarding her damages under her fourth cross-claim. Alternatively, she seeks a judgment (i) declaring the GDR the successor in interest to the Territory of Weimar under the 1921 Settlement Agreement and responsible for the obligations thereunder, including the payment of annuities to the male descendants of the Grand Duke and their assigns; and (ii) awarding her 900,000 marks with interest from 1945 (presumably for past annuities) and additional damages, unspecified in amount, under her fourth cross-claim.

II

We turn first to Kunstsammlungen's motion for summary judgment dismissing the Grand Duchess' claim to ownership of the paintings.

The 1921 Settlement Agreement, upon which this claim is founded, must be interpreted under German law. "A contract made in a foreign country by citizens thereof and intended by them to be there performed is governed by the law of that country." *Perutz v. Bohemian Discount Bank in Liquidation*, 304 N.Y. 533, 110 N.E.2d 6 (1953).[2] Both parties have submitted extensive affidavits by experts on German law which set forth their respective opinions on the governing law and the facts.[3]

---

**2.** Since our jurisdiction of this case is based on diversity, we must give effect to the conflict of law rules of the State of New York. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Index*

*Fund, Inc. v. Ins. Co. of No. America*, No. 77-7600, slip op. at 4157 (2d Cir. Aug. 1, 1978).

**3.** Kunstsammlungen has submitted four affidavits in support of its motion for summary judgment: two by Law Professor Bernhard Grae-

Kunstsammlungen's principal expert, Bernhard Graefrath, states:

It is my opinion that under the laws of Germany prior to the establishment of the GDR government in 1949 and under the laws of the GDR, the former Grand Duke Wilhelm Ernst did not own or have any rights to possession of the Duerer paintings after January 1, 1919, and neither his son Carl August nor the Grand Duchess has ever owned or had any rights to possession of the paintings. (Graefrath Affid. 3/31/77, para. 5)

His conclusion is based on the following premise: under the laws of Germany governing the property of the Grand Ducal Dynasty in Saxe-Weimar-Eisenach, the Duerers and the remaining paintings comprising the former Grand Ducal Art Collection constituted public property.[4] Known as Krongut ("crown goods"), this property was held by the Grand Dukes of Saxe-Weimar-Eisenach *qua* sovereign. Consequently, when Grand Duke Wilhelm Ernst abdicated his sovereignty in November 1918, the Grand Ducal family lost all rights and interest in the paintings and ownership passed to the successor sovereign of the Grand Duchy, the newly established Territory of Weimar.

The 1921 Settlement Agreement, entered into by the former Grand Duke and the new Weimar government, confirmed the public status of the paintings. This, section 1 therein provides in relevant part:

The former sovereign, Grand Duke Wilhelm Ernst of Saxony, having on November 9, 1918, for himself and his family, renounced the throne and succession to the throne in Saxe-Weimar-Eisenach for all time ..., the Grand Duke acknowledges ... that the entire Kammervermoegen, inclusive of the Krongut, is the exclusive property of the Territory of Weimar or its legal successor, insofar as not otherwise hereinafter expressly provided.

(Exhibit A to Graefrath Affid.) [5]

Section 8 of the Agreement, upon which the Grand Duchess grounds her claim, refers solely to those works of art owned by the Grand Duke and his family in a personal, private capacity. Like the Grand Ducal Art Collection, these paintings were also exhibited in the Weimar Museum (as well as in other state-owned public institutions and museums) when the 1921 Settlement Agreement was executed. This section reads in pertinent part: ·

The Grand Duke shall continue, as heretofore, to permit the public view [exhibition] of the objets d'art belonging to him and his family that are presently situated in public institutions and museums.... [T]he Territory of Weimar assumes the costs of maintaining and securing the objets d'art.... (Exhibit A to Graefrath Affid.)

Since the Grand Ducal Art Collection constituted Krongut, it was not governed by this section, but rather embraced by section 1.

To support his opinion that the Grand Ducal Art Collection was deemed Krongut and thereby controlled by section 1, Professor Graefrath refers to the 1913 Catalogue of the Weimar Museum. Those works of art privately owned by the Grand Ducal family bore the designation "Eigentum Sr. K. H. des Grossherzogs" ("property of his

---

frath, dated March 31, 1977 and November 21, 1977, respectively; one by Manfred Hofmann, an attorney who practices in Berlin, dated May 24, 1977; and one by Law Professor Martin Posch, dated October 27, 1977. The Grand Duchess has submitted the same number of affidavits in opposition to the motion: one by Curt Freiherr Von Stackelberg, an attorney who practices in Germany, dated· September 21, 1977; and three by Benjamin B. Ferencz, a New York attorney who has served as legal advisor to various German organizations and specializes in international law, dated September 23, 1977, December 14, 1977 and May 12,

1978, respectively. Mr. Ferencz is a member of the law firm which represents the Grand Duchess.

4. He agrees with the Grand Duchess that the Duerers were part of the Grand Ducal Art Collection and by 1913 were housed in the Grand Ducal Museum at Weimar.

5. The term Kammervermoegen ("property of the chamber"), of which Krongut was a part, denoted the aggregate of the property held by the former Grand Dukes *qua* sovereign.

Royal Highness the Grand . Duke"). The Duerer works, listed as numbers 170 and 171 in the catalogue, were not so designated and hence were now owned by the Grand Duke in a personal capacity.[6] The court is also cited to an 1821 Act issued by the then Grand Duke Carl August and a Ministerial Decree of 1862 as evidence of the public character of the paintings.

In response, the Grand Duchess' experts maintain that the Grand Ducal Art Collection did not constitute Krongut but was privately owned by the Grand Duke. To support their position, Mr. Von Stackelberg and Mr. Ferencz state that in 1848 the Collection was declared a Kronfideikomiss, a type of family trust in which title was vested in the Grand Ducal family until the male line became extinct. While under the terms of the trust the public was granted the right to view the paintings, title remained with the Ducal family. Thus, the 1918 abdication did not effect a transfer of this property to the state. Under section 8 of the 1921 Settlement Agreement, Wilhelm Ernst permitted the paintings to remain on loan to the Territory of Weimar, conditional on the payment of annuities, and under section 9 thereof, the Weimar government or its successors would acquire ownership of these works upon the extinction of the Grand Ducal male line, an event which has not yet occurred.

No copy of the Kronfideikomiss—the core of the Grand Duchess' argument that the paintings belonged to the Grand Duke after his abdication—is supplied to the court. The sole evidence that such an instrument was created is a reference by Mr. Von Stackelberg to an 1894 museum catalogue. However, no copy of the catalogue or its relevant portion is annexed to the Von Stackelberg affidavit.

Countering the Grand Duchess' version of the pre-1921 status of the paintings, Kunstsammlungens' experts contend that the designation of the Collection as Kronfideikomiss in 1848 did not render it private property. Invested though it was with a Kronfideikomiss, it remained under the dynastic law Krongut, which the Grand Duke was entitled to hold only so long as he retained his title as head of state. To support this conclusion, several Ducal decrees and public documents issued in the mid 1800's are cited which disclose the practice of the Grand Duke, the Landtag ("Parliament") and public officials of Sachsen-Weimar-Eisenach to treat the terms Kronfideikomiss and Krongut synonymously. Specifically, Acts of the Landtag promulgated in 1821 and 1822, an 1854 draft of a Ducal decree, and a Ministerial Decree of 1862—all appended as exhibits—are offered to prove that the Grand Ducal Art Collection retained its character as Krongut, notwithstanding its designation as Kronfideikomiss.[7]

Thus, the parties have devoted considerable time attempting to establish the pre-World War I status of the Grand Ducal Art Collection in order to support their respective interpretations of the 1921 Settlement Agreement. While the question is an interesting one, we find it unnecessary to the resolution of the question of ownership of the Duerers and thus not a material issue of fact within the meaning of Rule 56(c). *United States v. Matheson*, 532 F.2d 809, 813 (2d Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 185 (1976); 10 Wright & Miller, *Federal Practice and Procedure*, Civil § 2725 at 507 (1973).

■ Kunstsammlungen contends that whatever may have been the status of the

6. The catalogue and a translation thereof, as well as all other documents referred to by Kunstsammlungen's experts, are appended as exhibits to the affidavits.

7. In his most recent affidavit (Supplemental Affid. 5/12/78), Mr. Ferencz abandons, or at · least substantially retreats from his former position that in 1848 the Collection was vested with a Kronfideikomiss. It is apparent that the change in position was prompted by the docu-mentary evidence submitted by Kunstsammlungen demonstrating that the term Kronfideikomiss was used interchangeably with the term Krongut. We are puzzled by Mr. Ferencz's statement in the same affidavit that "*Kunstsammlungen's* claims to ownership of the Duerer paintings is the claim that the Grand Ducal Art Collection was part of a Kronfideikomiss. . . ." (Supplemental Affid. 5/12/78, para. 11 (emphasis added))

Duerers before 1927, an agreement executed in December of that year (the "1927 Settlement Agreement") unequivocally established that, at least from that time forward, they were owned by the state. We agree.

The 1927 Settlement Agreement was entered into between the Land of Thuringia, successor to the Territory of Weimar, and the widow of Wilhelm Ernst, acting on her own behalf and for her minor children, to settle an arbitration proceeding commenced by the Land against the heirs of Wilhelm Ernst.[8] The purpose of the proceeding was to recover portions of the Grand Ducal Art Collection which the royal family had failed to turn over to the Land. Paragraph 1 of the Agreement reads:

> The arbitration defendants acknowledge the property of the Land of Thuringia in the so-called Grand Ducal Art Collection. They surrender [give up] this collection, insofar as it is not already in the direct possession of the Land of Thuringia, and insofar as exceptions are not hereinafter provided, to the Land. (Exhibit D to Graefrath Affid.)

There is no exception in the Agreement with respect to the Duerer paintings.

Kunstsammlungen maintains that:

(i) the unambiguous declaration in paragraph 1 unequivocally established that the Duerer paintings were owned by the state, at least from 1927 forward;

(ii) a contemporaneous exchange of correspondence between the parties to the Agreement demonstrates that the Duerers were included in the "so-called Grand Ducal Art Collection" referred to in paragraph 1, thereby confirming the fact that title was vested in the state; and

(iii) a 1973 judgment entered by the highest court of the FRG provides additional authority that, under German law, the Grand Duchess is not entitled to ownership of the Duerers by virtue of the 1927 Agreement.

*The Correspondence*

By letter dated May 10, 1924, the Director of the Weimar Museum furnished two lists—one designated A and the other B—to the Thuringian Ministry of Finance for its use in the arbitration proceeding. The works of art contained in both lists had been part of the former Grand Ducal Art Collection.[9] List A, which included the Duerers, set forth by 1913 catalogue number those paintings already in the possession of the Weimar Museum. List B specified those works of art still in the custody of the Grand Ducal family. By letter dated October 19, 1925 and designated as "IV 1800 E 1" in the upper left-hand corner, copies of lists A and B were transmitted to the Grand Ducal family. When the dispute was settled, copies of the 1927 Agreement were sent to Mr. Justin Frank, attorney for the Grand Ducal family, for signature on behalf of his clients. On January 23, 1928, he returned to the Thuringian representatives three copies of the Agreement executed by him "as the general attorney for Her Majesty the Grand Duchess Feodora of Saxony and also, in her capacity as representative of her minor children." Paragraph 2 of the letter states:

> [W]e ask you to take notice that the signing is on the assumption that the scope of the so-called Grand Ducal Art Collection identified in [paragraph] number 1 of the Settlement Agreement is coextensive with the works of art embraced in Lists A and B of the letter IV 1800 E 1 of 19 October 1925. (Exhibit G to Graefrath Affid.)

---

**8.** The arbitration proceeding was instituted pursuant to Section 34 of the 1921 Settlement Agreement, which provided in relevant part that "any disputes that may arise out of this agreement are to be decided by a Senat of the Court of Appeal of Jena...." (Exhibit A to Graefrath Affid.)

**9.** More specifically, the Director wrote the Ministry: "Included as an appendix is a list of paintings which in the appendices to the Landtag's [Diet's] decree of 1862 were designated the property of the 'Grand Ducal Art Collection.'" (Exhibit E to Graefrath Affid.) By this time, the Collection was no longer called the Grand Ducal Art Collection but rather the State Art Collection of Weimar ("Staatliche Kunstsammlungen Zu Weimar").

In response to the above letter, the Thuringian Ministry of Education and Culture wrote Mr. Frank on February 18, 1928:

We respectfully acknowledge receipt of the three copies of agreements returned to us in the arbitration proceeding concerning the "Grand Ducal Art Collection."

With regard to paragraph 2 of your kind letter of Jan. 23, 1928, we take the liberty to point out: With respect to the "Grand Ducal Art Collection" the Management of the State Art Collections of Weimar at the time formulated two lists A and B. List A consists of those paintings which were already part of the State Art Collections in Weimar, to the extent that they were included in the 1913 catalogue. The List B paintings were not in the possession of the State Art Collections, but rather found in the possession of the Grand Ducal family.... These Lists A and B accord with Appendix I of the Agreement, although, of course, it contains only those items delivered to the Land of Thuringia, insofar as it did not already have them.... (Exhibit H to Graefrath Affid.)

In sum, these communications established the following:

(i) The "so-called Grand Ducal Art Collection" cited in paragraph 1 of the 1927 Settlement Agreement and there recognized as owned by the Land of Thuringia was "coextensive" with the works of art designated in Lists A and B. The Duerer paintings were contained in List A.

(ii) The Weimar Museum was in possession of the List A works when the 1927 Settlement Agreement was signed; it did not, however, have the List B works. Those works were specified in Appendix I to the Agreement.

*The FRG Court Decision*

That the 1927 Settlement Agreement vested title of the Grand Ducal Art Collection in the state is further established by a judgment rendered by the highest court of the FRG. Approximately eight years ago, the Grand Duchess instituted an action against the FRG to recover three paintings—one by Tischbein, a second by Ter Borch and a third by Rembrandt—which had been stolen from the Weimar Museum in April 1921.[10] As in the case at bar, the Grand Duchess claimed that the paintings were part of the Grand Ducal Art Collection, which was privately owned by the Grand Ducal family; that they had been loaned to the Territory of Weimar pursuant to the 1921 Settlement Agreement; that the annuity payments required to be made by that Agreement had ceased in 1945; and that by reason thereof the heirs of the former Grand Duke were now entitled to possession of the paintings. She additionally argued that title to the stolen paintings was not transferred to the state by the 1927 Settlement Agreement because Appendix I therein did not identify those paintings.

In March 1971, the Landgericht Bonn (Land Court of Bonn) dismissed the Grand Duchess' claim and in December 1971, the Oberlandergericht (Court of Appeal) of Cologne affirmed. On November 28, 1973, the Bundesgerichtshof (the Supreme Court) of the FRG affirmed the Cologne court ruling with respect to the Tischbein and Ter Borch paintings, but reversed it as to the Rembrandt.

The Supreme Court held that the 1927 Settlement Agreement transferred ownership of the entire Grand Ducal Art Collection to the Land of Thuringia and, since the Tischbein and Ter Borch were part of that Collection, the Grand Duchess' claim of title or possession was without foundation. In addition, the fact that the paintings did not appear in Appendix I to the Agreement did not exclude them from the all-inclusive transfer intended by the parties:

The arbitration settlement refers to the entire Grand Ducal Art Collection. The fact that the three stolen paintings were not enumerated in the exhibit [Appendix] is an omission in the Settlement Agree-

---

**10.** After the paintings were discovered in the United States, they were seized as alien enemy property under the Trading with the Enemy Act. In 1966, pursuant to an Act of Congress, they were delivered to the FRG in trust for the Weimar Museum.

ment inasmuch as it could not be ascertained that the paintings were consciously excepted from the arbitration settlement. . . . Their [the parties'] intention obviously was to preserve the Archdukel Art Collection as a whole. Accordingly on account of the arbitration settlement title to the stolen paintings had been transferred to the State of Thuringia.

The assumption of the Circuit Court of Appeals that the arbitration agreement was a sufficient basis for the change of title even though the heirs of the Grand Duke only "acknowledge" the title of the State of Thuringia is without any legal doubt. This wording in the arbitration-settlement was obviously chosen because the State of Thuringia at the time before the making of the arbitration already claimed for itself title to the art collection. By way of the arbitration settlement the title of the state was to be clarified for all purposes. Thus the arbitration settlement . . . must be considered as an agreement to transfer title. Decision of November 28, 1973, Bundesgerichtshof, W. Germany.[11]

It is the opinion of Kunstsammlungen's experts that this decision is an authoritative pronouncement of the law of Germany, namely, that if the Grand Duchess' claim to the Duerers were presented to the courts in the GDR, they, too, would reject it on the same rationale as the courts in the FRG rejected the above claim. This opinion is of course based on the premise that the Duerer paintings, like the Tischbein and Ter Borch, were part of the Grand Ducal Art Collection and thus were included in the "so-called Grand Ducal Art Collection" referred to in paragraph 1 of the 1927 Settlement Agreement.[12]

*Response of the Grand Duchess*

Having established that the 1927 Settlement Agreement effected a transfer of the entire Grand Ducal Art Collection to the State, and that the two Duerer paintings were part of the "so-called Grand Ducal Art Collection" cited in paragraph 1 of that Agreement, the burden now shifts to the Grand Duchess to demonstrate that there is a genuine issue of material fact which necessitates trial. Rule 56(e) was amended in 1963 to add these concluding two sentences:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond summary judgment, if appropriate, shall be entered against him.

As explained by Chief Judge Kaufman, writing for the court in *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972), this amendment merely embodies the rule long applied by this circuit that "[w]hen a party presents evidence on which, taken by itself, it would be entitled to a directed verdict . . . it rests upon [the opposing] party at least to specify some opposing evidence which it can adduce and which will change the result." *Id., quoting Radio City Music Hall Corp. v. United States*, 135 F.2d 715, 718 (2d Cir. 1943). Once the movant makes out a prima facie case that would entitle him to a directed verdict, summary judgment is appropriate unless the party opposing the motion offers some competent evidence that could be presented at trial demonstrating that there is a genuine issue as to a material fact.[13]

---

**11.** As to the Rembrandt, the Supreme Court found that it was one of the objets d'art inherited by the former Grand Duchess Sophie to which Sections 8 and 9 specifically referred ("the objets d'art . . . inherited by Grand Duchess Sophie . . . shall remain hers until revoked").

**12.** Since we regard the 1973 Federal Republic judgment and decision as precedent for the law

of Germany with respect to the issue of the interpretation of the 1927 Settlement Agreement, we need not reach the issue of whether res judicata estops the Grand Duchess from asserting her claim herein.

**13.** The analogy of summary judgment to the directed verdict has been variously stated by

When the opposing party relies on affidavits to support his contention that an issue of fact remains, they must comply with Rule 56(e). This rule provides that when affidavits are used to support or oppose a summary judgment motion, they "shall be made on personal knowledge, shall set forth such facts as would be admissable in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." With respect to exhibits, the second sentence of Rule 56(e) states: "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." These requirements are mandatory for "[o]nly in this way may the underlying objective of the summary judgment procedure—'to discover whether one side has no real support for its version of the facts'—be satisfied." *Dressler v. M/V Sandpiper,* 331 F.2d 130, 134 (2d Cir. 1964), *quoting Community of Roquefort v. William Faehndrich, Inc.,* 303 F.2d 494, 498 (2d Cir. 1962).

Having carefully reviewed the Grand Duchess' affidavits, we find that the standards of Rule 56(e) have been so disregarded as to strip them of any probative value for the purposes of this motion. As explained in greater detail below, they contain no information that would be admissible at trial and therefore cannot be considered to support the existence of a disputed issue of fact. *Donnelly v. Guion, supra,* 467 F.2d at 293; *Guitar v. Westinghouse Electric Corp.,* 396 F.Supp. 1042, 1053 (S.D.N.Y.1975), *aff'd,* 538 F.2d 309 (1976).

We noted earlier that the Grand Duchess submitted four affidavits in opposition to Kunstsammlungen's motion: one written by a German attorney, Mr. Von Stackelberg and three written by a member of the firm serving as counsel to the Grand Duchess, Mr. Ferencz. The Von Stackelberg affidavit makes no reference to the 1927 Settlement Agreement. The court must therefore rely exclusively upon the statements of Mr. Ferencz to determine whether an issue of material fact has been properly raised, precluding the grant of summary judgment.

In his affidavits dated September 23, 1977 and December 14, 1977, Mr. Ferencz states that the 1927 Settlement Agreement has no relevance to the instant case because the "so-called Grand Ducal Art Collection" of paragraph 1 did not include the Duerer paintings. To support his contention, he refers to the lists of paintings compiled by the Director of the Weimar Museum that were furnished to the parties during the arbitration proceeding and ultimately referred to by the attorney for the Grand Duchess in his transmittal letter of January 23, 1928 (*see* p. 819 *infra*). Mr. Ferencz asserts that "Dr. Kohler [museum director] made it clear from his categorization on List A that, regarding those paintings, there was no dispute, since they had been surrendered to the custody of the Territory of Weimar" and proceeds to infer therefrom that the Agreement did not encompass those works of art contained in List A. This broad inference is baseless; we have re-examined Dr. Kohler's letter and find no statement—or even semblance of such statement—that there was no dispute as to the List A paintings. Thus, there is absolutely nothing in the record to support Mr. Ferencz's bald assertion that the Duerers were excluded from paragraph 1 of the 1927 Agreement. It is well-established that conclusory allegations of this sort are inad-

the second circuit. Thus, in *Empire Electronics Co. v. United States,* 311 F.2d 175, 180 (2d Cir. 1962), the court wrote:

> Where only one inference could reasonably be drawn from the undisputed evidentiary facts, then summary judgment would be proper. In essence the standard to be applied on a motion for summary judgment is similar to that applied to a motion for a directed verdict.

And in *Beal v. Lindsay,* 468 F.2d 287, 291 (2d Cir. 1972), then Chief Judge Friendly stated:

> When the movant comes forward with facts showing that his adversary's case is baseless, the opponent cannot rest on the allegations of the complaint but must adduce factual material which raises a substantial question of the veracity or completeness of the movant's showing or presents countervailing facts.

*See also American Mfrs. M. I. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967); 10 Wright & Miller *supra,* § 2727.

missible in evidence and hence insufficient to defeat a motion for summary judgment. *Guitar v. Westinghouse Electric Corp., supra* at 1052 ("[p]laintiff has come forward with only unsupported speculation, opinion and surmise—none of which is sufficient to defeat a well-grounded motion for summary judgment"); *Wilson Jones Co. v. Gilbert & Bennett Mfg. Co.*, 332 F.2d 216, 219 (2d Cir. 1964) ("mere conclusory affidavits that an issue exists no longer suffice to defeat well-grounded motions for summary judgment"). *See also Dressler v. M/V Sandpiper, supra*, 331 F.2d at 134; 10 Wright & Miller, *supra*, § 2738 at 695.

In his supplemental affidavit dated May 12, 1978, Mr. Ferencz states:

> [R]ecently disclosed documents show that the wording of Paragraph 1 of the 1927 Agreement was changed in the drafting process to reflect the fact that the Grand Ducal House had specifically refused to give up ownership of the properties on List A. At the very least, the language of the 1927 Agreement on this question is ambiguous—the contract language does not foreclose either interpretation. Therefore, evidence of the intent of the parties, including documents . . . will be admissible at trial to show the parties' intent. (Ferencz Affid. 5/12/78, para. 10)

First, in utter disregard of Rule 56(e), Mr. Ferencz fails to annex the relevant documents which purportedly establish that the "Grand Ducal House has specifically refused to give up ownership of the properties on List A." For this reason alone, his summaries and representations as to the contents of these drafts are inadmissible in evidence and cannot be considered by the court in ruling on the instant motion.

Second, even assuming that Mr. Ferencz's opinion that the language in paragraph 1 of the 1927 Settlement Agreement is ambiguous were admissible, it would not preclude a grant of summary judgment under the circumstances of this case. As the treatises and the case law make clear:

> [A]lthough summary judgment will be refused if the written agreement is ambiguous, the preliminary question of whether an ambiguity does exist is a question of law that may be resolved summarily by the court. Thus, where there is no genuine issue as to the meaning of a contract, the mere assertion that ambiguity or divergent intent exists will not prevent the grant of the motion.

10 Wright & Miller, *supra*, § 2730 at 584, 587

*Accord, Freeman v. Continental Gin Company*, 381 F.2d 459, 465 (5th Cir. 1967); *New Wrinkle v. Armitage*, 238 F.2d 753, 757 (3d Cir. 1956); *Church v. Bobbs-Merrill Company*, 170 F.Supp. 32, 36 (D.Ind.), aff'd, 272 F.2d 212 (1959). *See also* 4 W. Jaeger, *Williston on Contracts*, § 616 (3d ed. 1961). Contrary to Mr. Ferencz's charge, the declaration in paragraph 1 of the 1927 Settlement Agreement is clear and unambiguous:

> The arbitration defendants acknowledge the property of the Land of Thuringia in the so-called Grand Ducal Art Collection. (Exhibit D to Graefrath Affid.)

While counsel for the Grand Duchess—more specifically, Mr. Ferencz himself—has expended substantial energy establishing the private status of the Grand Ducal Art Collection, he has *never* disputed the fact that the Duerers were part of that Collection. On the contrary, both the pleadings (Grand Duchess' Intervenor Complaint 4/9/75, para. 6) and affidavit (Ferencz Affid. 9/23/77, para. 8) admit that the Duerers were part of the Grand Ducal Art Collection. If in his latest affidavit Mr. Ferencz sought to adopt a different view, it was incumbent upon him to present the court with *evidentiary* facts to support that position.[14]

14. Even assuming Mr. Ferencz had provided the court with sufficient documentary proof to support his claim of ambiguity—a heavy burden, to say the least, in light of the evidence presented by his adversary, *see* pp. 819–820 *infra*—the court would nevertheless treat the question as one of law. While the intent of the parties to an ambiguous contract is generally an issue of fact which bars the grant of summary judgment, where no live testimony is available to assess the credibility of the parties and resolution of the issue turns on documentary

In sum, the Grand Duchess' opposing affidavits, at least with respect to her claim to the paintings, present no competent evidence which raise a genuine issue as to any material fact. They contain no evidentiary material to support her position that that 1927 Settlement Agreement bears no relevance to this case. Having failed to refute the evidence submitted by Kunstsammlungen—that the 1927 Settlement Agreement unequivocally established that the Duerer paintings were the property of the state and that the Grand Ducal family had no right or interest in them—the Grand Duchess has not discharged her burden under Rule 56(e). If, indeed, evidence was available to support the Grand Duchess' claim, that rule required her to come forward with it in order to withstand the instant motion. Having not done so, it is clear that if this case were to proceed to trial, a directed verdict would be appropriate for, only one inference could be drawn from the undisputed evidentiary facts: the Grand Duchess neither owns nor has the right to possession of the Duerer paintings.

## III

### THE ANNUITIES

■ The Grand Duchess' cause of action against Kunstsammlungen for the payment of annuities allegedly due under the 1921 Settlement Agreement is wholly independent of the main claim. As such, it is an improper cross-claim under Rule 13(g) and presents no basis on which this court can invoke ancillary jurisdiction.[15] Since the diversity jurisdiction of the federal courts does not extend to actions between aliens, *Joseph Muller Corp. Zurich v. Societe Anonyme de Gerance*, 451 F.2d 727, 729 (2d Cir. 1971), *cert. denied*, 405 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972), the cross-claim cannot be treated as an independent action

and, there being no subject matter jurisdiction, must be dismissed.

Rule 13(g) provides that a cross-claim may be asserted by one party against a co-party where it "[arises] out of the transaction or occurrence that is the subject matter either of the original action ... or [relates] to any property that is the subject of the original action." The claim to annuities is entirely unrelated to the subject matter of the original action: the theft of the Duerers in 1945, defendant's alleged unlawful retention of them, and the right to recover possession of them. The claim for annuities simply does not arise out of these matters and therefore cannot properly be asserted as a cross-claim.

Nor does the fact that the Grand Duchess grounds her claim to annuities under the 1921 Settlement Agreement—the same Agreement upon which she bases her claim to the paintings—qualify the former as a proper cross-claim under Rule 13(g). It is not the Grand Duchess' complaint which defines the original action for the purposes of Rule 13(g). The original action was that commenced by the FRG; it asserted solely a claim to possession of the Duerers and was neither founded on, nor made any mention of, the 1921 Settlement Agreement. Nor has Kunstsammlungen based its claim on that Agreement. That the Grand Duchess has injected the 1921 Settlement Agreement into her intervenor-complaint does not convert the subject matter of the original action—one to recover paintings—to an action to recover nine million marks from Kunstsammlungen.

Since the cross-claim bears no relevance to the principal claim, to wit, which of the parties is entitled to possession of the paintings, it fails to meet the standards of Rule 13(g) and this court is without jurisdiction to adjudicate the claim.[16]

---

evidence, the question is to be determined by the court. *White Motor Company v. United States*, 372 U.S. 253, 259, 83 S.Ct. 696, 700, 9 L.Ed.2d 738 (1963); *United States v. Matheson, supra* 532 F.2d at 815.

**15.** Cross-claims under Rule 13(g) fall within the ancillary jurisdiction of the court and need not

present independent grounds of federal jurisdiction. *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 617 n. 14, 86 S.Ct. 1018, 1025 n. 14, 16 L.Ed.2d 131 (1966).

**16.** For the same reasons, we dismiss the Grand Duchess' claim that under the 1921 Settlement Agreement she is entitled to declare that the

*The Act of State Doctrine*

Even assuming the claim for annuities were related to the subject matter of the original action, the act of state doctrine bars its adjudication by this court. By Act of December 11, 1948, the Landtag ("Parliament") of Thuringia terminated all contract rights of the former sovereigns and their families. The Act reads in relevant part:

(1) The whole of the real and personal property situated in the Land of Thuringia of the former sovereigns and members of their families shall be expropriated without compensation and therewith be property of the people.

(2) All rights of the former sovereigns and members of their families arising from statutes, resolutions of Landtag, contracts and arbitration awards, including such rights not of a property right kind, against former Thuringian particular states, the Land of Thuringia or public corporate bodies shall be abrogated. All obligations and liabilities of the Land of Thuringia resulting therefrom are hereby terminated.

(Exhibit I, Graefrath Affid.)

Thus, this Act clearly extinguished whatever rights the Grand Duchess' legal predecessors might have had with respect to the annuity payments.

■ We agree with Kunstsammlungen that the act of state doctrine forecloses our inquiry into the validity of the 1948 Act. The act of state doctrine, initially formulated by the Supreme Court in *Underhill v. Hernandez*, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897), was recently reaffirmed in *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964):

The act of state doctrine in its traditional formulation precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory.

[T]he Judicial Branch will not examine the validity of a taking of property within its own territory by a foreign sovereign government, extant and recognized by this country at the time of suit....
*Id.* at 401, 428, 84 S.Ct. 926, 940.

The Grand Duchess contends that the act of state doctrine is inapplicable because it "will give extraterritorial effect to the GDR's illegal acts of expropriation" (Grand Duchess' Memorandum In Opposition at 57). This claim lacks merit. While it is true that foreign acts of expropriation will not be enforced where the confiscated property is located in this country at the time of the decree, *Republic of Iraq v. First National City Bank*, 353 F.2d 47, 51 (2d Cir. 1965), *cert. denied*, 382 U.S. 1027, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966), this "extraterritorial" principle is plainly inapposite to the case at bar because in 1948, the confiscated property—the annuity obligation—was located in Germany.[17]

■ The Grand Duchess also urges application of the "commercial act" exception to the act of state doctrine, recently defined by the Supreme Court in *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976). There, the Court refused to extend the act of state doctrine to acts committed by foreign sovereigns in the course of their purely commercial operations. However, neither the 1921 Agreement nor its repudiation in 1948 constitute purely commercial acts within the meaning of that exception. "Expropriations of the property of an alien within the boundaries of the sovereign state are traditionally considered to be public acts of the sovereign removed from judicial scrutiny by application of the act of state rubric." *Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 73 (2d Cir. 1977).

Since resolution of the Grand Duchess' claim for annuities will inevitably call for a

---

GDR government has consented to an exchange of the Duerers for other works of art subsequently confiscated by the state.

**17.** It is well-settled that where the confiscated property consists of a debt, the situs of that

debt is the domicile of the debtor. *United Bank Ltd. v. Cosmic Int'l, Inc.*, 392 F.Supp. 262, 269 (S.D.N.Y.1975), *aff'd*, 542 F.2d 868, 872–74 (2d Cir. 1976); *Menendez v. Saks & Co.*, 485 F.2d 1355, 1365 (2d Cir. 1973).

judgment by this court on the sovereign act of a foreign state done within its own territory, we decline to consider that claim.[18]

## IV
## GRAND DUCHESS' DISCOVERY MOTIONS

On December 28, 1977, shortly after Kunstsammlungen's motion for dismissal of the Grand Duchess' intervenor-complaint and cross-claims was argued before the court, the Grand Duchess served on Kunstsammlungen a broad request for production of documents.[19] By letter dated January 4, 1978, the Grand Duchess asked us not to determine Kunstsammlungen's motion until these documents were produced. Thereafter, Kunstsammlungen opposed the Grand Duchess' request that we defer decision on its motion and on February 14, 1978, submitted a response to the Rule 34 request, objecting to the production *in toto.*

Following Kunstsammlungen's objection to the request, the Grand Duchess moved for an order under Rule 37(a) compelling Kunstsammlungen to produce the documents. On April 21, 1978, the court heard argument on the motion and learned that,

while Kunstsammlungen had recently obtained possession of two files of documents responsive to the request, it refused to turn them over on the principal ground that no showing had been made under Rule 56(f). The court thereupon expressed concern about resolving Kunstsammlungen's pending summary judgment motion without affording the Grand Duchess an opportunity to inspect these documents.

By letter dated April 26, counsel for Kunstsammlungen advised the court that to expedite decision on its motion, it was abandoning its previous position and was now making available those documents in its possession and control sought by the December 28 request. Kunstsammlungen wrote the court:

> We persist in our belief, stated in our Memorandum, that the Grand Duchess has failed to make the showing required under Rule 56(f), F.R.Civ.P., to justify production of the documents she now requests. Nevertheless, in view of your Honor's concern, and in order to avoid any further delay in determination of Kunstsammlungen's pending motion, we have communicated with Kunstsammlun-

**18.** Kunstsammlungen also takes the position that dismissal of the cross-claim is mandated by the doctrine of sovereign immunity. In response, the Grand Duchess contends that the doctrine is inapplicable because of the "counterclaim" exception recently codified in the Foreign Sovereign Immunities Act of 1976 and that "when ... Kunstsammlungen ... entered the case, it must have known that its claim to the paintings would be met by a counterclaim or cross-claim.... (Memorandum of Grand Duchess, 9/26/77 at 38). We do not believe that merely because Kunstsammlungen has invoked the jurisdiction of this court to recover possession of the Duerer paintings that it automatically subjected itself to all claims that could be asserted by co-parties, i.e., a claim for annuities that is wholly unrelated to the main cause of action. Section 1607 of the Foreign Sovereign Immunities Act, the so-called counterclaim exception, embodies this restriction. It states in relevant part:

> [T]he foreign state shall not be accorded immunity with respect to any counterclaim—
>> (b) arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state.

Since the annuities claim is not logically related to Kunstsammlungen's claim for possession of

the paintings, it does not qualify under this exception and is thus a matter as to which Kunstsammlungen is entitled to assert immunity from suit.

**19.** This request constitutes the second one served by the Grand Duchess on Kunstsammlungen. It requires Kunstsammlungen, the GDR, or any agency, ministry or instrumentality of the GDR, to produce all documents of any kind or nature relating to

> (a) The Kronfideikomiss established by Grand Duke Carl Frederick on or about 1848 covering the Grand Ducal Art Collection;
> (b) The legal title or possession of the Grand Ducal Art Collection, including the sequestration order of February 20, 1919;
> (c) The legal title or possession of the two Duerer paintings, including any file maintained by Kunstsammlungen or its predecessors containing the history of the paintings, and all actions taken by Kunstsammlungen and its predecessors with regard to the paintings;
> (d) Payments made by the State of Thuringia or any subsequent governmental entity to Grand Duke Wilhelm Ernst and his successors from 1921 to the present.

gen's Berlin counsel and been authorized to produce the documents in Kunstsammlungen's possession. The Supplemental Response enclosed herewith effects that production.

As the Supplemental Response states, production will be made of two files of copies of documents and a copy of a notice of February 20, 1919 (which the Grand Duchess specified in her Request). We are informed that Kunstsammlungen obtained possession of the two files last year in connection with the preparation of the motion for summary judgment; and of the February 20, 1919 notice earlier this year after receiving the Grand Duchess' request. No request for production of these documents was made until December 28, 1977, after the motion for summary judgment was argued and submitted to the court. With the production now, Kunstsammlungen will have produced all documents requested by the Grand Duchess that are in its possession or control. (Letter from Counsel for Kunstsammlungen to Hon. Jacob Mishler, April 26, 1978)

With respect to those documents in the possession or control of the GDR government and any of its agencies, Kunstsammlungen adhered to its previous objection that such request was unduly burdensome and thus improper under Rule 34. In support thereof, Kunstsammlungen cited this court's previous discovery rulings that it would not be required to search all the agencies and departments of the GDR. *See Memoranda of Decision and Order*, No. 69 C 93 (E.D.N.Y. Feb. 23, 1976 and March 26, 1976).

Satisfied that Kunstsammlungen had now fully responded to the Grand Duchess' document request, the court directed her counsel to file an affidavit stating the material facts contended to be in issue as required by Rule 9(g), S.D.N.Y. & E.D.N.Y. General Rules.[20]

On May 15, the Grand Duchess filed an affidavit entitled "Supplemental Affidavit Pursuant to Rule 9(f)."[21] In addition to setting forth purported issues of fact raised by the recently disclosed documents, counsel for the Grand Duchess again demanded an order directing Kunstsammlungen to produce the documents sought by the December 28 notice and a further postponement of our decision on Kunstsammlungen's motion in the interim.[22] To support this renewed request, the Grand Duchess argues that Kunstsammlungen has deliberately withheld documents available to it or in its possession that have been sought by her at various times during the course of discovery. We have not asked Kunstsammlungen to counter this latest accusation because, even assuming it has merit, which we doubt, it does not justify yet another continuance of the summary judgment motion under Rule 56(f).

Rule 56(f) prescribes the showing that must be made by a party who, like the Grand Duchess, seeks to defer determination of a pending summary judgment motion so that additional discovery may be had. The rule provides:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

█ To justify additional discovery under this rule, the opposing party must identify those issues of material fact likely to be

---

**20.** This rule states in relevant part:
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

**21.** Counsel for the Grand Duchess mislabelled the 9(g) statement "9(f)".

**22.** The Grand Duchess is apparently seeking the production of those documents in the possession of the GDR and all its agencies, which request was objected to by Kunstsammlungen as unduly burdensome and thus improper under Rule 34.

disclosed. *Waldron v. British Petroleum Co.*, 38 F.R.D. 170, 176 (S.D.N.Y.1965), *aff'd sub nom. Waldron v. Cities Service Co.*, 361 F.2d 671 (2d Cir. 1966), *aff'd sub nom. First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *California Apparel Creators v. Weider of California*, 162 F.2d 893, 901–02 (2d Cir.), *cert. denied*, 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393 (1947); 10 Wright & Miller, supra, § 2741 at 740. Thus, where a party has had a reasonable opportunity to engage in discovery and continues to be unable to identify specific, genuine issues of material fact, the court should deny the motion for a continuance and enter summary judgment for the movant. As our court of appeals stated in affirming the district court's denial of plaintiff's motion for further discovery under Rule 56(f):

> On October 16, 1964, Cities Service [defendant] again renewed its motion, and the court finally granted summary judgment in September 1965. Despite these more than ample opportunities to develop a basis for this action, plaintiff has been unable to do so, and has failed to demonstrate the existence of any genuine issue of fact. The court quite properly denied the Rule 56(f) motion for further discovery by which plaintiff sought to engage in still another "fishing expedition" in the hope that he could come up with some tenable cause of action.
>
> [I]t is apparent in this case that Waldron [plaintiff] was given ample opportunity and scope in his shifting programs of discovery .... The plaintiff ... may not seek indefinitely, within the period of limitations, to use the process to find evidence in support of a mere "hunch" or "suspicion" of a cause of action.

*Waldron v. Cities Service Co., supra*, 361 F.2d at 673.

 Applying these principles, we note at the outset that neither the Grand Duchess nor her counsel specify a single fact that they have reason to believe will emerge from the requested document production. The bare allegation that their adversary has willfully withheld documents in the past is clearly insufficient to discharge their burden of disclosing issues of material fact so as to warrant additional discovery under Rule 56(f). To permit yet another continuance on this allegation would sanction the precise type of speculative fishing expedition condemned by this circuit in *Waldron*. Second, the Grand Duchess has had ample time and opportunity to engage in discovery to substantiate her various claims. She has already submitted three lengthy affidavits in opposition to the pending motion which her counsel have vigorously argued compel denial of summary judgment. While Rule 56(f) is to be liberally construed to prevent injustice to a party opposing a summary judgment motion, it is also designed to enable a court to avoid abuse of the discovery process. *See, e.g., First National Bank of Arizona v. Cities Service Co., supra*, 391 U.S. at 294–99, 88 S.Ct. 1595–97. Having concluded that the Grand Duchess' motion is a disguised attempt to inflict still another delay upon the court and her adversary, we refuse to countenance such abuse. The motion for additional discovery is denied.

## CONCLUSION

For the foregoing reasons (i) Kunstsammlungen's motion for summary judgment dismissing the Grand Duchess' intervenor-complaint is granted; (ii) Kunstsammlungen's motion for judgment on the pleadings dismissing the cross-claims is granted, and (iii) the Grand Duchess' motion to compel discovery is denied, and it is

SO ORDERED.