TRAVELERS INSURANCE COMPANY, Plaintiff,

v.

BROADWAY WEST STREET ASSOCIATES, Defendant.

TRAVELERS INSURANCE COMPANY, Plaintiff,

v.

BROADWAY WEST STREET ASSOCIATES, City of New York Environmental Control Board, Transport Mutual Service, Inc., Altamar Corporation, East Coast Overseas Corporation, Smartwood Hesse, Inc., Cichanowicz, Callan & Keane, Public Resources Advisory Group, Inc., William N. Breger Associates, and Breger Terjesen Associates, Defendants.

Nos. 92 Civ. 5650 (SWK), 92 Civ. 5651 (SWK).

United States District Court, S.D. New York.

Dec. 5, 1995.

Herrick, Feinstein by Carla T. Main, New York City, for Plaintiff.

Proskauer Rose Goetz & Mendelsohn by Edward Brodsky, Michael Roffer, New York City, for Defendant Broadway West Street Associates.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In these related mortgage foreclosure actions, plaintiff Travelers Insurance Company ("Travelers") moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment in 92 Civ. 5650 (the "First Action") and 92 Civ. 5651 (the "Second Action"). Travelers also seeks an order, pursuant to Federal Rule of Civil Procedure 25(c), substituting Broadway Mortgage Holding Corporation ("BMHC") as the party plaintiff in the First Action, and substituting Crescent Heights of Connecticut Corporation ("Crescent") as the party plaintiff in the Second Action. Defendant Broadway West Street Associates ("BWSA") cross-moves for an order vacating the receivership in both actions. For the reasons set forth below, Travelers's motions are granted and BWSA's cross-motion is denied.

### BACKGROUND [1]

#### I. The Mortgages

Travelers, a Connecticut corporation with its principal place of business in Connecticut,

---

1. The background of this action was set forth fully in *Travelers Ins. Co. v. Broadway West Street Associates*, No. 92 Civ. 5650, 5651, 1994 WL 174242 (S.D.N.Y. May 5, 1994) (the "1994 Memorandum Opinion"), familiarity with which is presumed. Only those facts relevant to the dis-

holds certain first mortgages and notes which encumber the properties located at 71 Broadway, New York, New York (the "Broadway Property") in the amount of $40,000,000, and 21–23 West Street, New York, New York (the "West Street Property") in the amount of $32,000,000 (the "Mortgages").[2] The Mortgages provide that, in the event that BWSA fails to make any payments when due, Travelers may declare immediately due and payable the entire outstanding principal, together with interest and related charges, if any, to which it is entitled.

On June 28, 1991, after BWSA defaulted on the Mortgages, Travelers revoked BWSA's right to collect rents paid by the tenants of the properties. Subsequently, Travelers and BWSA executed a Cash Management Agreement ("CMA"), dated August 1, 1991, pursuant to which BWSA ceded to Travelers financial control and operation of the Broadway and West Street Properties. In the CMA, BWSA conceded that it "failed to make numerous monthly payments under the Loan Documents," and acknowledged that it was "in default under the Loan Documents and admit[ted] that it is unable to cure" the default. *See* CMA at ¶¶ (b) and (d), annexed to the Affidavit of Thomas Odai, sworn to on Oct. 18, 1993, as Exh. "6."

Pursuant to the CMA, Montrose Realty Corporation ("Montrose") was designated as the managing agent for the properties, and all tenants were to make payments directly to Montrose. Montrose, in turn, was to pay Travelers any excess rental income over certain operating and other expenses (the "Excess Cash Collateral"), and Travelers was to apply the Excess Cash Collateral to BWSA's loan obligations. Apparently, the parties were thereafter unable to resolve the problems posed by declining tenancies and rents during a downturn in the economy in New York's real estate industry.

## II. The Complaints

On July 29, 1992, Travelers commenced these actions by filing two complaints seeking the entire principal of the Mortgages. On September 23, 1992, the Court appointed George Lence ("Lence") as receiver for both properties. In the appointment the Court ordered that Lence "prior to entering upon [his] duties, execute and file an oath that [he] will faithfully discharge the trust committed to [him]. . . ." *See* Order Appointing Receiver, dated September 23, at 3. Shortly after his appointment, Lence hired the Shorenstein Company ("Shorenstein") to replace Montrose as managing agent.

The complaint in the First Action named BWSA and "John Doe # 1" through "John Doe # 100" as defendants, and the complaint in the Second Action named as defendants the City of New York Environmental Control Board (the "Environmental Board"), as well as BWSA and "John Doe # 1" through "John Doe # 100." On October 20, 1992, Travelers amended both complaints, deleting the John Doe defendants. Subsequently, Travelers served a second amended complaint in the Second Action, identifying eleven tenants of the West Street Property as named defendants in addition to BWSA and the Environmental Board.

Both actions name BWSA as a defendant, and allege that BWSA is a limited partnership, none of whose partners are Connecticut citizens. The Second Action names twelve defendants in addition to BWSA, and bases jurisdiction on diversity of citizenship. In the 1994 Memorandum Opinion, however, the Court held that diversity of citizenship had not been properly pleaded by Travelers with

position of this motion shall be recited below. Unless otherwise indicated, the following undisputed facts are taken from the parties' Rule 3(g) Statements, the Amended Complaint in the First Action, the Second Amended Complaint in the Second Action, and the affidavits and declarations submitted by all parties to both actions.

2. BWSA is the owner of both encumbered properties and the mortgagor under the Mortgages. The Broadway Property is a 22–story office building containing 266,000 square feet of renta-

ble space. The West Street Property is a 31–story office building consisting of 344,860 square feet of rentable space.

By agreement dated June 27, 1995, Travelers assigned all of its right, title and interest in the two foreclosure actions to BMHC (the "First Assignment Agreement"). On the same day, BMHC assigned its interests in the Second Action to Crescent (the "Second Assignment Agreement").

respect to defendants William N. Breger Associates, Feldstein Associates, and Cichanowicz, Callan & Keane. The Court allowed Travelers to amend its pleadings pursuant to 28 U.S.C. § 1653 to cure the defective allegations of jurisdiction, and on August 17, 1994, Travelers filed a third amended complaint asserting diversity jurisdiction over the defendants in question.

## III. Discovery Issues

On April 30, 1993, BWSA served Travelers with its First Request for the Production of Documents (the "Document Request"), seeking information concerning Travelers's application of the Excess Cash Collateral to satisfy BWSA's loan obligations. BWSA allegedly sought this discovery to support allegations it intended to assert as to Travelers's misappropriation of these funds. BWSA contended that it was considering amending its answers to the complaints in order to plead additional affirmative defenses of "unconscionability and unclean hands" as well as plead

> a possible counterclaim (conversion) based on allegations that Travelers had misapplied some (or all) of the rental income it received directly from the buildings' managing agents and which it should have earmarked for payment of certain of BWSA's obligations under the applicable notes and mortgages.

*See* Declaration of Michael Roffer, dated Apr. 7, 1995 (the "Roffer Decl."), at ¶ 14.

On June 4, 1993, Travelers provided BWSA with its Responses and Objections to the Document Request. Thereafter, on June 23, 1993, BWSA was granted access to approximately 2,500 pages of documents produced by Travelers, including, *inter alia:* (1) monthly management statements (covering the period October 1991 through October 1992); (2) monthly operations reports (covering the period November 1992 through April 1993); and (3) statements of debt showing all amounts outstanding on the Mortgages. On that date Travelers also informed BWSA that other requested documents were irrelevant and thus inappropriate subjects of document production.

On June 30, 1993, Travelers sent to BWSA a letter offering to copy and forward any of the documents BWSA had reviewed at Travelers's offices on June 23, 1993. By letter dated July 6, 1993, BWSA advised Travelers that it was not satisfied with the documents Travelers had produced. Thereafter, by letter dated July 15, 1993, Travelers addressed BWSA's dissatisfaction, and restated its position on BWSA's document request. That day, Travelers provided BWSA with payment histories for the loans on the Broadway and West Street Properties. On July 21, 1993, BWSA again demanded that Travelers produce additional documents. That day, Travelers reiterated its offer to produce copies of any of the documents BWSA had reviewed on June 23, 1993. Shortly thereafter, BWSA advised Travelers that it wanted a copy of every document it reviewed on June 23, 1993. By hand delivery on August 24, 1993, Travelers forwarded to BWSA copies of each of the approximately 2,500 pages of documents that BWSA had requested.

Upon reaching an impasse on the discovery issue, the Court appointed Magistrate Judge Naomi Reice Buchwald to hear the dispute. By Order dated November 12, 1993, Magistrate Judge Buchwald determined that Travelers need not produce any more documents.

In the 1994 Memorandum Opinion, the Court directly addressed the discovery issue, finding that "Travelers has already provided BWSA with sufficient discovery for it to determine whether it has viable defenses and/or counterclaims against Travelers. Despite the fact that both cases commenced almost two years ago, however, BWSA has failed to assert any such defenses and/or counterclaims in its pleadings." *Travelers,* 1994 WL at *8–9. Accordingly, the Court refused to allow BWSA unlimited discovery concerning unpled allegations, and instead granted BWSA leave to assert any available defenses and/or counterclaims based on the amended complaints in both actions. *Id.* at *9. To date, however, BWSA has failed to plead any additional affirmative defenses or counterclaims relating to the issues for which discovery was sought in response to Travelers's third amended complaint.

Despite its failure to plead additional defenses or counterclaims, on September 9, 1994, BWSA resumed discovery, serving and filing notices to depose. By letter dated September 19, 1994, Travelers refused to produce any witnesses based on Magistrate Judge Buchwald's Order.

In October 1994, the Court, pursuant to Federal Rule of Civil Procedure 53(a), appointed Charles G. Moerdler as special master (the "Special Master" or the "Master") to supervise and conduct settlement discussions. On December 22, 1994, pursuant to the Special Master's instructions, Travelers produced and defendant deposed several witnesses. Additionally, the Master directed that Travelers produce a representative of Montrose, its managing agent, and of Shorenstein, the receiver's managing agent, as requested by BWSA.[3] When Shorenstein declined to appear voluntarily, BWSA stated that "neither [Shorenstein nor Travelers's depositions] will be necessary." BWSA failed to subpoena the Shorenstein witnesses or to otherwise seek the intervention of the Master with respect to this issue.

## IV. The Present Motions

Travelers now moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment and for entry of an Order and Judgment of Foreclosure and Sale. Specifically, Travelers seeks summary judgment granting foreclosure on the first mortgage on each of the secured properties. It contends that the loan histories, the CMA and the loan documents establish, beyond any material question of fact, that BWSA defaulted on the loans, and that as a matter of law Travelers may now foreclose. BWSA opposes the motion, arguing that further discovery is needed to determine whether valid defenses or counterclaims are available. BWSA also cross-moves to vacate the receivership on the grounds that: (1) the Court was without jurisdiction at the time of the appointment; and (2) the receiver failed to file the required oath of office.

On January 18, 1995, the Court enlarged Special Master Moerdler's authority by permitting him to set briefing schedules for all potential motions, hear motions made by the parties and report to the Court on those motions. Subsequently, on May 30, 1995, the Special Master issued a Report and Recommendation (the "Report") recommending that the Court (1) grant Travelers's motion for summary judgment; and (2) deny BWSA's cross-motion to vacate the receivership.

First, the Special Master determined that "the *factum* of default was not in dispute" and that "plaintiff has provided BWSA substantial and sufficient discovery to effectively assert any cognizable defense." Report at 13–14. The Master found that based on the facts, BWSA was not in a position where it could not assert defenses without further discovery:

No facts are here stated that demonstrate in anything resembling a convincing fashion that, despite all of the discovery it has already had, BWSA has been denied access to an identifiable witness, documentary source or other information which, if access were provided, would enable it to plead and mount an effective defense.

*Id.* at 15. Accordingly, the Master declined to stay BWSA's motion pursuant to Federal Rule of Civil Procedure 56(f).

Second, with respect to the receivership, the Special Master found that the Court had jurisdiction at the time it appointed the receiver, even if jurisdiction were initially improperly pled. *Id.* at 19. He further determined that correction of the inadequate jurisdictional allegations by Travelers could be corrected *nunc pro tunc*. *Id.* at 17–18.

Finally, with regard to the receiver's failure to file an oath, the Special Master found that such a failure could also be corrected *nunc pro tunc*. *Id.* at 20. Thus, he found BWSA's challenge to the validity of the receivership to be without merit.

On July 13, 1995, BWSA filed its objections to the Report. Specifically, BWSA ar-

---

**3.** After interviewing the Montrose representative, counsel for BWSA stated on the record that it was his "belief at [that] point, but not something that I'm willing to commit to without some fur-

ther reflection on some of the answers that were provided today, that there will not be a need for any further Travelers's depositions." *See* Roffer Decl. at ¶ 56.

gued that the Special Master erred in: 1) failing to consider the availability of equitable defenses to foreclosure, and 2) refusing to vacate the receiverships.

Subsequent to the issuance of the Report, Travelers also moved, pursuant to Federal Rule of Civil Procedure 25(c), to substitute (1) BHMC as party plaintiff in the First Action; and (2) Crescent as party plaintiff in the Second Action. The Court shall address these motions in turn below.

## DISCUSSION

### I. Objections to the Special Master's Report

■■■ As a general matter, a district court is required to accept a master's findings of fact unless clearly erroneous. Fed. R.Civ.P. 53(e)(2). Where a court orders a special master to hear motions and merely render recommendations to it, however, the special master's factual findings are entitled to a somewhat lesser degree of deference. *See Morgan v. Kerrigan*, 530 F.2d 401, 411 n. 13 (1st Cir.1976). Accordingly, the Court shall review the Special Master's factual findings *de novo*.

■■■ With respect to conclusions of law, the Master's recommendations are subject to *de novo* review. *See Williams v. Lane*, 851 F.2d 867, 885 (7th Cir.1988), *cert. denied*, 488 U.S. 1047, 109 S.Ct. 879, 102 L.Ed.2d 1001 (1989); *Fogel v. Chestnutt*, 668 F.2d 100, 116 (2d Cir.1981). It is especially important to conduct a *de novo* review in addressing recommendations resolving dispositive motions such as a motion for summary judgment. *See Jay v. Secretary of Dep't of Health & Human Servs.*, 998 F.2d 979, 983 (Fed.Cir. 1993).

### II. Summary Judgment

■■■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

■■■ The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. New York*, 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir.1988); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). But the court is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11; *Knight v. United States Fire Ins. Co.*, 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). To determine whether the nonmoving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary

judgment, *id.*, but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion. *See, e.g., Knight v. United States Fire Ins. Co.*, 804 F.2d at 11–12.

 Once the nonmoving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to satisfy his or her ultimate burden under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. at 331 n. 2, 106 S.Ct. at 2556 n. 2 (Brennan, J., dissenting). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1969)).

In the case at hand, the note and mortgage papers clearly demonstrate that (1) BWSA is the mortgagor on the loans for the Broadway and West Street Properties; (2) Travelers is the mortgagee on these properties, and (3) BWSA defaulted on its loan obligations. In fact, BWSA expressly admitted default under the CMA. It is also undisputed that Travelers may accelerate the due date of the entire outstanding balance of the loan plus any interest accrued or foreclose on the encumbered properties in the event of a default by BWSA.

According to BWSA, the Special Master prematurely addressed Travelers's summary judgment motion, as it did not receive sufficient discovery to formulate defenses and counterclaims. The Court disagrees.

 In order to prevent a premature grant of summary judgment, Federal Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the appli-
cation for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). The mere existence of some theoretical factual issues, however, where those issues are not material to the claim before the Court, will not suffice to defeat a motion for summary judgment. *See Security Pac. Mortgage and Real Estate Servs., Inc. v. Canadian Land Co. of Am., N.V.*, 690 F.Supp. 1214, 1226 (S.D.N.Y.1988), *aff'd sub nom. Security Pac. Mortgage & Real Estate Servs., Inc. v. Herald Ctr., Ltd.*, 891 F.2d 447 (2d Cir.1989). A Rule 56(f) application must be rejected where the evidence sought is almost certainly non-existent or is the object of pure speculation. *See Exxon Corp. v. FTC*, 663 F.2d 120 (D.C.Cir. 1980) (Rule 56(f) application properly denied where "there [were] simply no facts in the record" to support existence of object of party's proposed discovery); *Contemporary Mission v. New York Times*, 665 F.Supp. 248, 269 (S.D.N.Y.1987) (Rule 56(f) is "not a license for a fishing expedition."). Rather, a party must identify specific issues of material fact which are likely to be disclosed if it is granted a reasonable opportunity to pursue the additional discovery. *See Federal Republic of Germany v. Elicofon*, 536 F.Supp. 813 (E.D.N.Y.1978), *aff'd sub nom. Kunstsammlungen Zu Weimar v. Elicofon*, 678 F.2d 1150 (2d Cir.1982); *see also Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir.1981) (party denied additional discovery under Rule 56(f) because it failed to justify its allegations) ("A 'bare assertion' that the evidence supporting a [party]'s allegation is in the hands of the [other party] is insufficient to justify a denial of a motion for summary judgment under Rule 56(f).").

 In the 1994 Memorandum Opinion, the Court found that BWSA had conducted sufficient discovery to plead any viable defenses or counterclaims. Previously, Magistrate Judge Buchwald determined that Travelers had provided BWSA sufficient documentation. The Special Master also agreed that the discovery in the present

case was more than adequate. Specifically, the Special Master stated:

> The prior chronological recitation of these proceedings, as well as the prior decisions of the Court and of the Magistrate Judge, amply illustrate a pattern of endless discovery requests that ultimately were complied with.... At no time during the proceedings before the Special Master, prior to the instant motions, did BWSA advise the Special Master that it required still further discovery, or detail what more was sought or the reason therefore, or that BWSA otherwise required intervention to procure still further specified discovery.

*See* Report at 14. Despite the Court's directive that BWSA was not entitled to further discovery on unpled matters, BWSA has had still more discovery since that time. BWSA has nonetheless failed to plead additional defenses or counterclaims in either action.

The Court concurs with Magistrate Judge Buchwald and Special Master Moerdler, and again finds that Travelers has provided BWSA with more than enough discovery for it to determine whether it has viable defenses and/or counterclaims. Having chosen not to accept the Court's offer to assert new defenses or counterclaims, BWSA cannot now complain that Travelers's summary judgment motion is premature.[4] Accordingly, BWSA's objections to the Report are overruled and Travelers's motion for summary judgment is granted.

## III. The Receivership

BWSA objects to the Special Master's determination that the receivership was valid on two grounds. First, BWSA argues that Travelers's failure to properly plead jurisdiction prior to the appointment of the receiver rendered the receivership invalid. Second, it argues that Lence failed to file the appropriate oath as required by his order of appoint-

ment and N.Y.Civ.Prac.L. & R. § 6402. The Court finds these arguments unpersuasive.

## A. Jurisdictional Objections

 In its first objection BWSA requests that the Court vacate the receivership. It contends that diversity jurisdiction did not exist at the time of the appointment of the receiver on September 23, 1992 because Travelers had named one hundred John Doe defendants, which, according to BWSA, precluded the assertion of diversity jurisdiction as a matter of law. According to BWSA this initial failure of jurisdiction is fatal to the Court's power to appoint a receiver because 28 U.S.C. § 1653 is not to be used to create jurisdiction retroactively where it did not previously exist.[5]

In framing its objections to the appointment, BWSA has analytically reversed the issue. As the Special Master points out, the issue is not "whether the Court, absent subject matter jurisdiction, may appoint a receiver. The issue is whether or not the ·Court appointed the receiver [at the commencement of the Actions] without having subject matter jurisdiction." *See* Report at 18.

The pleadings do not, in this context, give the Court jurisdiction; rather they establish the fact that the Court has jurisdiction. The Court recognized that jurisdiction existed when it appointed the receiver. Indeed, in analyzing Travelers's failure to properly plead diversity jurisdiction, the Court found "that [Travelers's] defective jurisdictional allegations are not fatal. In fact, it is evident from the parties' affidavits that diversity jurisdiction exists between Travelers and Breger Associates and Feldstein Associates." *See Travelers,* 1994 WL at *8.

With respect to the John Doe defendants, any jurisdictional ambiguity as to diversity

---

4. If BWSA disagreed with the findings of the Memorandum Decision because it believed it was unable to adequately plead, at that time, based on the discovery it had, then its appropriate remedy was to move this Court pursuant to Local Rule 3(j) for reargument of the motions within 10 days of the Memorandum Decision.

5. Section 1653, it is argued, can be used to correct "only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." Defendant's Objections to the Report of the Special Master, filed July 13, 1995, at 8, quoting *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 831, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989).

was corrected by the Amended Complaints in both actions, which removed all of the John Doe defendants. It would be manifestly unfair to not allow such incorrect statements concerning jurisdiction to be corrected, where the existence of jurisdiction is not seriously in question. In fact,

> Sound authority supports the general proposition that the "John Doe" practice is unwarranted in diversity cases; and the action is subject to dismissal unless the John Does are eliminated or their citizenship affirmatively alleged. Where, however, the John Does are dismissed and there is complete diversity between the remaining parties, the pleading defect has not been regarded as reversible error.

2A James W. Moore *et al.*, *Moore's Federal Practice* ¶ 8.10 (2d ed.1986) (footnotes omitted); *see also Roth v. Davis*, 231 F.2d 681 (9th Cir.1956). Where jurisdiction in fact exists, but has merely been improperly pled, the defect can be corrected *nunc pro tunc. See, e.g., Federal Home Loan Mortgage Corporation v. Bronx New Dawn Renaissance VII*, No. 93 civ. 7970, 1995 WL 412399 (S.D.N.Y. July 11, 1995) (granting plaintiff leave to amend the caption of its complaint *nunc pro tunc* to substitute named defendants for "John Doe" defendants); *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir.1984) (courts may correct inadequate jurisdictional allegations even after a judgment has been entered in the case and even where a party has noticed an appeal, and such judgments will stand); *Eklund v. Mora*, 410 F.2d 731, 732 (5th Cir.1969); *Menashe v. Sutton*, 90 F.Supp. 531, 533 (S.D.N.Y.1950).

BWSA's reliance upon *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 831, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989) for the proposition that the Court was without authority to allow Travelers to amend its pleadings pursuant to 28 U.S.C. § 1653 is misplaced. That case involved a suit against a named individual with no domicile in any state. The defendant was thus "stateless" for purposes of 28 U.S.C. § 1332(a)(3), and the absence of diversity jurisdiction was facially apparent. In the present case, in contrast, the correction to the pleadings involved a statement about jurisdictional facts, since Travelers never expressly asserted jurisdiction over a non-diverse party. Since Travelers could have legitimately crystallized the John Does into concrete, diverse, named defendants, it would be illogical and contrary to the purposes of Section 1653 to not allow Travelers to eliminate the defendants entirely.[6]

### B. The Oath of Receiver

In its second objection, BWSA argues that the receivership is also defective because of the receiver's failure to file the appropriate oath, as required by his order of appointment and CPLR § 6402.

■ The Court finds, however, that a properly notarized oath was, in fact, filed in both the First Action and the Second Action on October 27, 1992 by the receiver, as required by the order of appointment and section 6402. *See* Oath of Receiver, filed Oct. 27, 1992, attached to Receiver's Bond. The Court notes further that, even if the receiver had failed to file the oath in 1992, he successfully cured any deficiency by filing a second oath on August 2, 1995, since, as in the case of improperly pleaded jurisdiction, an oath may be filed *nunc pro tunc. See, e.g., In re Doyle*, 195 A.D. 733, 187 N.Y.S. 751 (2nd Dep't 1921); *see also In re Lauder*, 73 N.Y.S.2d 15 (N.Y.Sup.Ct.1947). Accordingly,

6. Even if Section 1653 were not alone sufficient in the present case, Rule 21 of the Federal Rules of Civil Procedure, which provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just" would allow dismissal of dispensable, nondiverse parties. Rule 21 empowers a district court to dismiss, at any stage of the proceedings, a dispensable party whose presence destroys complete diversity, if such dismissal is necessary to preserve diversity jurisdiction and would not harm the other parties. *See, e.g., Fritz v. American Home Shield Corp.*, 751 F.2d 1152, 1154–55 (11th Cir.1985); *Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1068–69 (3d Cir. 1979); *Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 691–92 and n. 23 (4th Cir.1978); *see also Newman–Green*, 490 U.S. at 832, 109 S.Ct. at 2222–23 ("[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered.").

**164**

BWSA's motion to vacate the receivership is denied.

## IV. The Motion for Substitution

Travelers also moves, pursuant to Federal Rule of Civil Procedure 25(c) to substitute (1) BHMC as party plaintiff in the First Action; and (2) Crescent as party plaintiff in the Second Action. Travelers asserts that BMHC and Crescent have acquired all rights, title and interest in the loans relevant to these actions. BWSA does not oppose the addition (through joinder) of Crescent as a party plaintiff, it does oppose removal of Travelers as plaintiff and the substitution of BMHC.

Fed.R.Civ.P. 25(c) provides that, in the case of any transfer of interest, the Court may, upon motion, direct "the person to whom the interest is transferred to be substituted in the action or joined with the original party." Rule 25(c) substitution is a procedural mechanism designed to facilitate the continuation of an action when an interest in a lawsuit is transferred and does not affect the substantive rights of the parties. *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.,* 757 F.2d 1256, 1263 (Fed.Cir.1985); *Dollar Dry Dock Savings Bank v. Hudson St. Development Associates,* No. 92 Civ. 3737, 1995 WL 412572, at *4 (S.D.N.Y. July 12, 1995); *FDIC v. Tisch,* 89 F.R.D. 446, 448 (E.D.N.Y.1981) (A court's primary consideration in deciding a motion under Rule 25(c) is whether substitution will expedite and simplify the action.).

BWSA does not contest that BMHC and Crescent are the real parties in interest in these actions. Rather, it objects to the substitution on the ground that BMHC "has been engaged in attempting to transfer some or all of its acquired interest in the Broadway Action to another entity." BWSA cites no cases in support of this proposition. The Court disagrees that any such negotiations should act as a bar to substitution. In terms of placing the party in interest in the litigation, it would be make little sense to disallow the substitution where BMHC was merely negotiating to sell its interest, while retaining Travelers, whose interest has been entirely extinguished.[7]

BWSA also forwards the contention that "Travelers provides no evidence—or even any affirmative statement—that BMHC or Crescent consent to the dismissal of Travelers from this case." BWSA does not deny that Travelers is no longer a party in interest in the present case. In addition, both assignment agreements expressly provide in identical language that BMHC and Crescent consent to substitution. Because BMHC and Crescent are the undisputed real parties in interest and their substitution as plaintiffs will facilitate this action, the motion for substitution under Rule 25(c) is granted.

### Conclusion

For the reasons set forth above, BWSA's objections to the Special Master's Report and Recommendation are rejected and Travelers's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is granted in both actions. In addition, BWSA's cross-motion to vacate the appointment of the receiver is denied in both actions. Finally, Broadway Mortgage Holding Corporation is hereby substituted for Travelers in 92 Civ. 5650, and Crescent Heights of Connecticut Corporation is substituted for Travelers in 92 Civ. 5651. Travelers should submit a proposed Order and Judgment of Foreclosure and Sale on or before December 21, 1995.

SO ORDERED.

---

7. The Court rejects BWSA's assertion that BMHC and Crescent have not consented to the substitution. *See* First Assignment Agreement at ¶ 2 ("Purchaser undertakes and agrees to cause the Purchaser and/or its assignees and successors to be substituted as plaintiffs in the two Actions brought by [Travelers] in the Court."). The Second Assignment Agreement contains almost identical language.

The Court also disagrees with BWSA's contention that joinder is preferable to substitution since it seeks further discovery from Travelers. For the reasons set forth above, discovery is closed, and this argument must be rejected.