**THE READ CORPORATION, F.T. Read & Sons, Inc., and Nordberg–Read, Inc., Plaintiffs,**

v.

**POWERSCREEN OF AMERICA, INC., Powerscreen International Distribution Ltd., and Powerscreen International, PLC, Defendants.**

**No. 96–11025–JLT.**

United States District Court, D. Massachusetts.

Sept. 24, 1998.

---

David Berman, Berman & Moren, Medford, MA, for David Berman.

Jack R. Pirozzolo, Willcox, Pirozzolo & McCarthy, Boston, MA, for Read Corp., F.T. Read & Sons, Inc.

Michael Arthur Walsh, Eric J. Marandett, Kenneth E. Steinfield, Choate, Hall & Stewart, Boston, MA, Arthur S. Beeman, Lea A. Player, Rebecca A. Dernberger, Peter J. Stavros, J. Mark Appleberry, W. Bruce Baird, Brown, Todd & Heyburn PLLC, Louisville, KY, for Powerscreen of America Inc., Powerscreen International Distribution Ltd., Powerscreen International, PLC.

## MEMORANDUM

TAURO, Chief Judge.

Plaintiffs in this patent infringement action seek a preliminary injunction barring Defendants from manufacturing or selling the accused device. The case has been before a Special Master since November 1997.[1] The Special Master, after holding two evidentiary hearings, found that Plaintiffs, who waited six years after discovering the infringement before bringing suit, would not be irreparably harmed by denial of the injunction. The Master issued a report recommending that this court deny the preliminary injunction. Over Plaintiffs' objection, the court accepts the Master's recommendation.

### I. FACTS

Plaintiffs, The Read Corporation and F.T. Read & Sons ("Read"), manufacture a patented portable screening device which extracts useful materials from construction debris and waste products. Read's patent expires on October 1, 1998. Defendants, Powerscreen of America, Inc. ("Powerscreen America"), Powerscreen International Distribution Ltd. ("Powerscreen Distribution"), and Powerscreen International PLC ("Powerscreen International") manufacture, sell and distribute similar screening devices, including the "Power Grid."

Plaintiffs allege that Powerscreen America infringed Read's patent by selling the Power Grid in the United States. Plaintiffs further

---

1. The Master was initially appointed to supervise discovery. The court later authorized him to rule on all non-dispositive pre-trial motions, and limited him to making a report and recommendation on all dispositive motions.

allege that Powerscreen Distribution and Powerscreen International engaged in "active inducement of infringement" of the patent in violation of 35 U.S.C. § 271(b).

## II. *ANALYSIS*

### A. *The Preliminary Injunction Standard in Patent Cases*

 A plaintiff seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) irreparable harm if the injunction is denied; (3) balance of hardships in plaintiff's favor; and (4) public interest favors issuance of the injunction. *See Hybritech Inc. v. Abbott Laboratories,* 849 F.2d 1446, 1451 (Fed.Cir.1988). In a patent action, once the patent holder shows a likelihood of success, irreparable harm is presumed. *See Polymer Technologies, Inc. v. Bridwell,* 103 F.3d 970, 973 (Fed.Cir.1996) (having shown a likelihood of success, a patent holder is entitled to a rebuttable presumption of irreparable harm). A defendant may rebut the presumption by showing that the plaintiff delayed unduly in bringing suit. *See Hybritech,* 849 F.2d at 1457 ("[A] showing of delay ... may preclude a determination of irreparable harm."); *T.J. Smith and Nephew Ltd. v. Consolidated Med. Equip. Inc.,* 821 F.2d 646, 648 (Fed.Cir.1987).

### B. *Irreparable Harm*

The Master found that Plaintiffs established a "substantial, but far from absolute, likelihood of success on the merits." Special Master's Report and Recommendation ("Report") at 19–20. Defendants do not contest this finding.

The Master based his decision on the irreparable harm prong. Plaintiffs, having shown likelihood of success, earned the presumption of irreparable harm. The Master found that Defendants rebutted this presumption by showing that Read, after discovering Powerscreen's infringement, waited six years before filing suit. According to the Master, the six year delay "bespeaks in the loudest possible tones that Plaintiff did not consider that it was being *irreparably* harmed by Defendant's alleged infringement of its patent." *Id.* at 25. The Master rejected Plaintiffs' argument that financial problems in the early 1990's, combined with the strain of several other ongoing patent actions, accounted for the delay. Having concluded that the six year delay negated the presumption of irreparable harm, the Master recommended denial of the preliminary injunction.

### 1. Standard of Review

In scrutinizing Plaintiffs' motion for a preliminary injunction, the threshold issue is the standard of review to apply to the Special Master's recommendation. The core of the Master's Report was his finding that Read, without good cause, waited six years before bringing suit, negating the presumption of irreparable harm. This court must defer to the Master's factual finding and uphold it unless it is clearly erroneous. *See* Fed. R.Civ.P. 53(e)(2); *see also Anderson v. Mt. Clemens Pottery,* 328 U.S. 680, 689, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

 Read argues for de novo review, citing *Morgan v. Kerrigan,* 530 F.2d 401, 411 n. 13 (1st Cir.1976), for the proposition that no deference is due when a Master is limited to making a report and recommendation. *Morgan,* however, does not hold that de novo review applies to factual findings which underlie a Master's recommendation. Rather, *Morgan* deals with recommendations by a Master which do *not* involve the Master taking over "the fact finding process" and making "findings of fact meriting deferential treatment." *Id.* Although bare recommendations are not entitled to deference, factual findings are reviewed for clear error. *See In re Van Sweringen Corporation,* 180 F.2d 119, 120 (6th Cir.1950) (cited by the *Morgan* court) (distinguishing between recommendations and factual findings).[2] As the Special Master's recommendation to deny the pre-

---

2. For a contrary reading of *Morgan,* applying de novo review to factual findings, see *Travelers Insurance Co. v. Broadway West Street Associates,* 164 F.R.D. 154, 160 (S.D.N.Y.1995) (citing *Morgan* for the proposition that "[w]here a court orders a special master to hear motions and merely render recommendations to it ... the special master's factual findings are entitled to a somewhat lesser degree of deference").

liminary injunction rested on his factual finding (reached after a two day evidentiary hearing) that neither financial problems nor pending litigation caused Read's six year delay, the proper standard of review is clear error.

### 2. Read's Six Year Delay

The linchpin of the Master's Report is his finding that Read's financial troubles and litigation burdens did not cause the six year delay. The Master ruled that this undue delay negated the presumption of irreparable harm.[3] As stated, the Master's finding that neither financial problems nor other litigation accounted for the delay is reviewable only for clear error.

The Master vigorously rejected Read's claim that the combination of poor financial health and costly pending lawsuits prevented it from suing Powerscreen until 1996, stating that there was "no evidence that Plaintiff's absorption with [other litigation] prevented it from giving proper attention [to Powerscreen]." Report at 17. While acknowledging that Read "had serious financial problems", the Master concluded that those problems "hardly explain[ed] Plaintiff's lengthy delay in moving against Powerscreen." *Id.* at 19. Summarizing, the Master stated that "[o]n the current state of the evidence I cannot say to what [the Plaintiff's delay] was due." *Id.*

Plaintiffs' justifications for their delay were stronger than the Master's Report suggests. At the second evidentiary hearing, Plaintiffs presented substantial evidence, which the Master did not challenge, suggesting that Read was in dire financial straits during much of the 1990's. Michael Davis, Read's Chief Financial Officer, and Rodman Forter, Read's Chief Executive Officer, testified to the following:

In 1990 the Bank of New England, Read's primary lender, began to fail. The Bank demanded that Read pay its $13.7 million debt in full. To meet the Bank's demands, Read stopped production in 1991 and began selling assets. Production did not resume until 1992, at which point sales had declined 75% from 1989. Read was also unable to pay other creditors, and avoided bankruptcy only by reaching forbearance agreements.

The corporation suffered the following losses (figures include Debt Restructure Plan repayments) (Appendix to Plaintiffs' Objection to Report and Recommendation, Exhibit K, Summary of Key Line Items From Financial Statements):

| | |
|---|---|
| 1990 | $3,500,000 |
| 1991 | $6,089,000 |
| 1992 | $1,152,000 |
| 1993 | $ 483,000 |
| 1994 | $ 10,000 |
| 1995 | $ 170,000 |

Mr. Davis also testified that Read officials repeatedly discussed suing Powerscreen between 1990 to 1996, rejecting the idea each time "[b]ecause of the financial condition of the company, the pressure ... to liquidate the company, the defaults we were under and the [forbearance] agreements." July 13, 1998 Evidentiary Hearing ("Hearing") at 97–98. Mr. Forter echoed this testimony, pointing out that one of the infringement suits pending during this period cost Read roughly $1.4 million. *Id.* at 178–179.

■ The Special Master recognized that Read was embroiled in litigation and in poor financial health for several years, but found that these problems did not explain the delay. In rejecting the Plaintiffs' explanation, the Master pointed out that in 1992 Read "invited" Powerscreen to become a defendant in a pending action against Bibco, Powerscreen's New Hampshire distributor. The

---

**3.** Plaintiffs contend that the Special Master erred as a matter of law by ruling that Plaintiffs' delay during pending litigation constituted undue delay, citing *Minnesota Mining and Mfg. Co. v. Carapace Inc.*, 1993 WL 528166 (D.Minn. Oct.29, 1993) ("*3M*"). The *3M* court held that delay caused by other litigation is not undue delay, stating that the patent holder's "decision first to enforce its patents against competitors doing the largest volume of business" does not negate the presumption of irreparable harm. *Id.*, 1993 WL 528166, at *5. The essence of Special Master Berman's ruling, however, is his determination that Read's delay was *not* caused by pending litigation or financial troubles. *See* Report at 26. This finding of fact distinguishes this case from *3M*. The Master properly ruled that unexcused delay may rebut the presumption of irreparable harm. *See Hybritech*, 849 F.2d at 1457.

Master stated that it was "impossible to reconcile Plaintiff's having asked defendant to join the New Hampshire litigation with Plaintiff's present claim that until 1996 ... it could not afford to litigate with a financially potent adversary like Powerscreen." Report at 17. Mr. Forter, Read's CEO, testified that he knew Powerscreen would decline the invitation and made the offer merely as a negotiating ploy. Transcript of the July 14, 1998 Evidentiary Hearing at 18. Although the Special Master's Report did not address Mr. Forter's testimony, presumably he did not believe it. The invitation is open to mutiple readings, and the Master's interpretation was reasonable.

The Master also noted that "[e]ven after this action was brought, Plaintiff waited six months to move for a preliminary injunction." Report at 18. This second delay further undermined Read's contention that financial problems caused the six year delay. Mr. Forter claimed that the second delay was necessary to determine, via discovery, which of the various Powerscreen entities were the proper parties to enjoin. Hearing at 220–227. The Master, without explanation, found "no credible evidence to support this claim." Report at 18.

The Master's findings of fact, the inferences he drew from testimony, and his judgments as to the credibility of witnesses are entitled to great deference. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). To rebut the presumption of irreparable harm, Defendants merely needed to produce sufficient evidence "to put the existence of [the] presumed fact into genuine dispute." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020,

1037 (Fed.Cir.1992); *see also* Fed.R.Evid. 301. The Master's finding that Defendants' evidence of undue delay met this "minimum quantum" was not clearly erroneous. *A.C. Aukerman* at 1037. Once rebutted, the presumption "vanishes completely." *Id.* As Plaintiffs make no showing of irreparable harm beyond their attempts to defend the presumption, they fail to carry their burden.[4]

## III. CONCLUSION

For the foregone reasons, the court finds that the Special Master's determination that Plaintiffs' failed to show irreparable harm was not clearly erroneous.[5] Plaintiffs' Motion for a Preliminary Injunction is DENIED.

Defendants argue that Plaintiffs advanced frivolous and unnecessary arguments in the hearing before the Special Master, and ask the court to order Plaintiffs to pay their legal fees. This court disagrees. Plaintiffs made legitimate arguments and presented evidence relevant to the issue of undue delay. Defendants' Renewed Motion for Costs is DENIED.

AN ORDER WILL ISSUE.

---

4. As noted, Plaintiffs' patent expires on October 1, 1998. Plaintiffs insist that the patent's imminent expiration may not be considered in the irreparable harm analysis. The court did not consider this fact, and does not address whether impending expiration is relevant in determining irreparable harm.

5. Although the irreparable harm analysis disposes of Plaintiffs' motion, the court will address the two remaining prongs of the preliminary injunction standard. As Plaintiffs presented no evidence showing what injury they would suffer from denial of the injunction, the Special Master correctly found that the balance of hardships does not favor either party. The public interest prong favors issuing the injunction as, absent some other interest that would be injured, "public policy favors protection" of patent rights. *Smith International v. Hughes Tool Company,* 718 F.2d 1573, 1581 (Fed.Cir.1983); *see also Hybritech,* 849 F.2d at 1458.